**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEYONA D. THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., AMAZON.COM, SERVICES LLC, and AMAZON FULFILLMENT SERVICES, INC.,<br><br>Defendants. | No. 23 C 6637<br><br>Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Keyona D. Thomas, acting pro se, brings several claims that Defendants Amazon.com, Inc., Amazon.com, Services LLC, and Amazon Fulfillment Services, Inc. denied her accommodations in violation of The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; discriminated against her on the basis of race, sex, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; discriminated against her on the basis of her disability in violation of the ADA; subjected her to a hostile work environment in violation of Title VII; and retaliated against her for asserting her rights under Title VII and the ADA. (Dkt. 45.) Now before the Court is Defendants' motion for summary judgment. (Dkt. 132.) For the reasons that follow, the Court grants Defendants' motion.

## I. BACKGROUND

Plaintiff, an African American woman, has been employed as an L1 Fulfillment Associate by Defendant Amazon Fulfillment Services, Inc. ("Defendant") since July 15, 2021. (Dkt. 45 ¶ 1.) In this role, Plaintiff's responsibilities are to "make sure that items are shipped out in a timely manner" including by "sorting the items" that Amazon delivers and "mak[ing] sure they get to the proper end point." (Dkt. 133 ¶ 13) (alteration in original).

When Plaintiff was hired, she received and reviewed copies of Amazon's written equal employment and disabilities policies. *See* (Dkt. 133 ¶¶ 6–11.) The equal employment policy prohibits discrimination, provides an avenue for reporting, investigating, and correcting noncompliance. (*Id.* ¶¶ 6–7.) The policy dealing with employees with disabilities similarly prohibits discrimination and provides a process for requesting and securing reasonable and necessary accommodations. (*Id.* ¶¶ 8–10.)

### A. July 2021 Request for "Patience"

On or around July 22, 2021, Plaintiff submitted a request for an accommodation. *See* (Dkt. 45 ¶ 4; Dkt. 133 ¶ 14). On the form, Plaintiff noted that she had "a mild case of osteoarthritis" as well as "Bi-Polar Depression," and requested to be accommodated through "patience and allowing me to do my job without… pressure." (Dkt. 133 ¶ 14.) On the same form, Plaintiff noted she was not having difficulty performing her job functions. (*Id.* ¶ 15.) That same day, Defendant told Plaintiff she was required to provide medical documentation that included both her diagnosis and the restrictions it required. (*Id.* ¶ 16.) Plaintiff then shared with

Defendant a letter from her medical provider that confirmed she had been diagnosed with bipolar depression and mild osteoarthritis; the letter did not include any information about the restrictions these diagnoses demanded. *See* (*id.*)

On August 6, 2021, Defendant asked Plaintiff to "provide additional information and clarify what restrictions were needed." (*Id.* ¶ 17.) Plaintiff did not provide this additional information, later testifying that she had not experienced any issues or limitations because of her osteoarthritis and that she ultimately did not pursue this accommodation request. (*Id.* ¶¶ 17–19.)

### B. September 2022 Accommodation Request

In September 2022 Plaintiff requested an accommodation for Achilles tendinitis. (*Id.* ¶ 20.) She submitted a doctor's note that indicated her diagnosis required her to abstain from "prolonged use of stairs or ladders for the next 6 weeks." (*Id.*) Plaintiff received the six week accommodation she requested. (*Id.* ¶ 21.)

### C. The November 2022 Accommodation

#### *1. The Accommodation Request*

In November 2022, Plaintiff requested another accommodation related to her Achilles tendinitis. (Dkt. 138 ¶ 23.) She provided a doctor's note that stated Plaintiff could "[r]eturn to work on 11/2/2022 with the following restrictions for the next 6 weeks: No use of stairs or ladders. Please allow the use of regular gym shoes with over toe protection." (Dkt. 133 ¶ 23.) Starting on November 1, 2022, and ending on December 13, 2022, Defendant placed Plaintiff in a department with no stairs involved. (*Id.* ¶ 25.) And it was Defendant's policy to make safety overshoes available

regardless of whether one had an accommodation. (*Id.* ¶ 24.) Although she was notified by Amazon's Disability and Leave Service ("DLS") on December 8, 2022, that her accommodation would soon expire, Plaintiff never requested an extension of this accommodation. (*Id.* ¶¶ 32–33.)

*2. The December Incident*

On or around December 2nd or 3rd 2022, Joseph, one of Plaintiff's coworkers, denied Plaintiff the use of on-site safety overshoes. (Dkt. 45 ¶ 5; Dkt. 133 ¶ 28.) Apart from this incident, Defendant consistently provided Plaintiff with safety overshoes. (Dkt. 138 ¶ 29.)

**D. Harassment Incident**

On June 30, 2023, Plaintiff made a sexual harassment report to Defendant's human resources ("HR") personnel regarding Vincent, one of her coworkers. (Dkt. 133 ¶ 35.) In the complaint, Plaintiff stated that Vincent was at times flirtatious with her and that, on that same day, he had "slightly caress[ed]" her arm." (*Id.* ¶ 35.) HR told Plaintiff that they would investigate the matter and speak with Vincent. (*Id.* ¶ 36.) Upon investigating, HR concluded that Vincent had "made inappropriate comments" toward Plaintiff but was unable to substantiate that he had grabbed her arm. (*Id.* ¶ 37.) Defendant issued Vincent a written warning. (*Id.* ¶ 38.)

**E. August 2023 and November 2023 Lifting Restrictions**

Between July 13, 2023, and August 29, 2023, Plaintiff took a leave of absence, during which she received short-term disability benefits. (*Id.* ¶ 40.) When she returned to work, Plaintiff submitted a medical note that stated she was "able to

return to work on 8/22/23 with some restrictions" including "no heavy lifting (>10 pounds), no pulling, no pushing, and no sports activity until 9/5/23." (*Id.* ¶ 41.) On August 22, a member of the DLS team notified Plaintiff that they would "explore accommodations" based on her request. (*Id.* ¶ 42.) DLS then produced a job accommodation report approving Plaintiff for a "tote washing" position starting on August 29, 2023, and extending until September 5, 2023. (*Id.* ¶ 43.) Tote washing, classified as "a temporary light duty placement," involved washing out totes and taking them "over to . . . a rack and set[ting] them to dry." (*Id.* ¶ 45.) Plaintiff believed her accommodation should have lasted two weeks upon her return from leave, but she did not raise any issues with DLS regarding this accommodation. (*Id.* ¶ 44, 47–48.)

Defendant also provided Plaintiff with a workplace injury-related leave of absence from October 12, 2023, until November 9, 2023. (*Id.* ¶ 49.) Before returning to work, Plaintiff again submitted an accommodation request. (*Id.* ¶ 50.) When Plaintiff returned to work on November 2, 2023, Defendant again accommodated her in a temporary light duty role from November 2, 2023, until November 16, 2023, the term specified in Plaintiff's medical note. (*Id.* ¶¶ 51–52.)

**F. Behavior and Performance Issues**

On April 11, 2024, Nicole, a Process Guide at the warehouse, approached Plaintiff and asked her to move stations; Plaintiff refused. (*Id.* ¶ 53; Dkt. 138 ¶ 53.) Plaintiff's manager, Chiquita, then approached Plaintiff and asked her to "do what you're told to do." (Dkt. 133 ¶ 54.) Plaintiff "walk[ed] away." (*Id.*) The next day,

Chiquita and an HR representative held a meeting with Plaintiff to issue her a written warning, which stated that her refusal to "follow the directives provided by . . . Leadership" was "unacceptable and considered insubordinate" under Amazon's policies. (*Id.* ¶ 55.)

On May 24, June 6, and July 4, 2024, Defendant issued Plaintiff written warnings for her productivity. (*Id.* ¶ 61.) At Amazon, the productivity of Fulfillment Associates is evaluated based on objective criteria such as unit count and hours worked, and managers neither generate the feedback nor have power to change the performance expectations for any individual associate. (*Id.* ¶ 62.)

Although there is no evidence to indicate that Nicole was aware of Plaintiff's disability, Chiquita was aware of Plaintiff's bipolar depression. (*Id.* ¶¶ 58–59.) There is no evidence to indicate that Chiquita knew about Plaintiff's sexual harassment report, her EEOC charges, or this suit. (*Id.* ¶¶ 60, 63.) Plaintiff was not terminated because of any of these warnings, nor were her pay, hours, benefits, or shift affected. (*Id.* ¶ 57, 61.)

### G. Failed Applications for Other Positions

During her tenure at Amazon, Plaintiff also applied to—but was not hired for—various positions at various Amazon facilities. Plaintiff applied to an Area Manager role at an Amazon facility in Crest Hill, Illinois. (*Id.* ¶ 64.) The job posting required "1+ years of employee and performance management experience" and noted a preference for candidates who had "1+ years of performance metrics, process improvement or lean techniques experience." (*Id.*) Plaintiff also applied to two Area

Manager roles at MDW7, one of which was eventually eliminated. (*Id.* ¶¶ 66, 69.) The role required "2+ years of employee and performance management experience." (*Id.* ¶ 66.) Plaintiff's only potentially relevant experience involved managing her niece while running a dog clothing line alongside her mother. (*Id.* ¶ 65.)

Although she had "[n]o direct HR experience," Plaintiff also applied to an HR Partner role at an Amazon facility in Joliet, Illinois, (*id.* ¶ 67), and to an Associate Partner HR role in Matteson, Illinois (*id.* ¶ 70). The HR Partner role was later eliminated by Amazon. *See* (*id.* ¶ 67). She also applied to a Principal Employee Relations role requiring "ten or more years of relevant experience in employee relations, labor relations or labor employment law," even though Plaintiff did not have such experience. (*Id.* ¶ 68.) Nothing in the record suggests that the hiring managers for these positions knew whether Plaintiff had a disability, had requested any accommodations, or had filed any complaints or lawsuits. (*Id.* ¶¶ 66–68, 70.)

### H. Initiation of Legal Proceedings

On August 31, 2023, Plaintiff filed this lawsuit. (Dkt. 133 ¶ 1.) Only after bringing this suit did Plaintiff file any charges with the EEOC. (*Id.* ¶ 2.) Plaintiff filed two charges with the EEOC. (*Id.* ¶ 2, 4.) In the first charge, filed on December 28, 2023, Plaintiff brought a Title VII hostile work environment complaint related to her June 30, 2023, sexual harassment complaint and asserted a claim of discrimination under the ADA. *See* (*id.* ¶ 2.) On the form, Plaintiff checked the boxes for "color, disability, race, religion, sex, and retaliation." (*Id.*). In the second charge, filed on June 10, 2024, Plaintiff alleged disability discrimination and retaliation in relation

to the April 2024 confrontation and the subsequent write-up, as well as the productivity warning issued on May 24, 2024. (*Id.* ¶ 4.)

## II. LEGAL STANDARD

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III. DISCUSSION

Plaintiff brings the following claims: that Defendants (1) denied her accommodations in violation of the ADA; (2) discriminated against her on the basis of race, sex, and national origin in violation of Title VII; (3) discriminated against her on the basis of her disability in violation of the ADA; (4) subjected her to a hostile

work environment in violation of Title VII; and (5) retaliated against her for asserting her rights under Title VII and the ADA. (Dkt. 45.) Each of these claims fails.

### A. Failure to Accommodate under the ADA and Title VII Discrimination

Plaintiff brings a claim under the ADA for failure to accommodate and another under Title VII for discrimination, but the Court may not reach the merits of either claim. Before bringing an ADA or Title VII action in district court, a Plaintiff must first file a charge with the EEOC. *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 812 (7th Cir. 2014) (citing 42 U.S.C. § 12117(a)); *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 565 (7th Cir. 2019). A plaintiff "is barred from raising a claim in the district court that has not been raised in . . . her EEOC charge unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (quoting *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999)).

Not only did Plaintiff initiate this lawsuit before filing any charges with the EEOC (Dkt. 133 ¶ 1), but she also failed to raise before the EEOC her claims for failure to accommodate under the ADA or for discrimination based on race, sex, and national origin under Title VII. *See* (*id.* ¶¶ 2, 4). Indeed, instead of attempting to show that she did exhaust her administrative remedies, Plaintiff argues she did not need to file these charges with the EEOC. (Dkt. 140 at 3.)

Neither Plaintiff's claim for failure to accommodate nor her Title VII discrimination claim is "reasonably related" to any of the claims she alleged in her

EEOC charges. *See, e.g.*, *Riley*, 909 F.3d at 190 ("'[A] failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. . . . [T]hey are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employer was terminated because of her disability.'" (quoting *Green*, 197 F.3d at 898)). And although Plaintiff's first EEOC charge checked the boxes for "color . . . , race . . . , [and] sex," (Dkt. 133 ¶ 2), merely "checking [a box] in the EEOC charge is not enough to make the EEOC charge like or reasonably related to" the failure to accommodate or race, sex, and national origin discrimination claims. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011); *see also Cheek v. W. & S. Life Ins., Co.*, 31 F.3d 497, 501 (7th Cir. 1994). Because she did not present her failure to accommodate and Title VII discrimination claims to the EEOC in the first instance, Plaintiff is barred from raising them in this federal action.

### B. Disability Discrimination under the ADA

Plaintiff also asserts that she was discriminated against in violation of the ADA. Plaintiff argues that she suffered adverse action caused by her disability in two ways: First, she argues that "[a]dverse action was taken in the form of . . . four consecutive write-ups, one behavioral, and three performance-related." (Dkt. 140 at 9.) Second, she argues that Defendants' failure to promote her or to hire her for the positions she applied for constitutes adverse action caused by her disability. (*Id.* at 10.) Both theories fail.

Under the ADA, employers are prohibited from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). To defeat summary judgment on her disability discrimination claim, Plaintiff must show there is a genuine issue of material fact as to whether (1) she is disabled; (2) she is qualified to perform the essential functions of the job with or without a reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse action was caused by her disability. *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020).

To show the necessary causality, Plaintiff "must show a genuine issue of material fact exists regarding whether [her] disability was the but for reason for the adverse action." *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) (quoting *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017)). To make this showing, Plaintiff can use a direct or indirect method of proof. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Under the direct method of proof, a plaintiff can present either direct or circumstantial evidence. *Id.* Direct evidence requires "an admission by the decision maker that his or her actions were based upon the prohibited animus." *Id.* Circumstantial evidence, on the other hand, could include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence . . . that similarly

situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.*

Under the indirect method, a plaintiff must establish a *prima facie* case of discrimination by showing that "(1) [s]he is disabled under the ADA; (2) [s]he was meeting [her] employer's legitimate employment expectations; (3) [s]he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Id.* If this is established, the burden then shifts to the defendant to identify a legitimate, nondiscriminatory reason for its employment decision. *Id.*

Plaintiff satisfies neither method. Her attempts to satisfy each method are addressed in turn.

*1. The Performance and Behavioral Write-Ups*

Plaintiff does not provide sufficient evidence to establish a genuine issue of material fact as to whether the performance and behavioral write-ups she received were a result of disability discrimination. The write-ups occurred in April, May, June, and July 2024, after the operative Complaint was filed. *See* (Dkt. 133 ¶¶ 55, 61). Plaintiff, however, did not present these new facts to the Court via Rule 15(d) of the Federal Rules of Civil Procedure, which provides the proper mechanism by which a party may supplement a pleading with transactions, occurrences, or events that happened since the date of the pleading to be supplemented. *Chi. Reg'l Council of*

*Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). Accordingly, the Court need not consider them. *Id.*

Even if the write-ups must be considered, Plaintiff's first theory fails because she has not shown that the warnings constituted adverse action motivated by discriminatory animus. *See* (Dkt. 138 ¶¶ 58–60). Plaintiff makes no effort to show that her disability was the "determinative factor" in Defendant's choice to issue the write-ups. *See Schoper v. Bd. of Trs. of W. Ill. Univ.*, 119 F.4th 527, 534 (7th Cir. 2024). Indeed, she presents no evidence that the write-ups were driven by discriminatory intent at all. Plaintiff does not dispute her documented performance issues and insubordination, nor that they led to the written warnings. (Dkt. 138 ¶¶ 53–55, 58–59). Instead, the record shows that the warning issued for insubordination was directly responsive to an incident involving insubordination by Plaintiff, *see* Dkt. 133 ¶¶ 53–55, and Plaintiff provides no evidence to show that she was meeting her employer's legitimate expectations such that the performance warnings were unwarranted. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 548 (7th Cir. 2008). Nor does Plaintiff present evidence that similarly situated, non-disabled employees received better treatment. Rather, she admits that Defendant conducts productivity evaluations based on standard objective criteria. *See* (Dkt. 138 ¶ 62).

*2. Failure to Promote*

Plaintiff also fails to provide evidence to show that disability discrimination could have caused her failure to obtain the various positions she applied for. Plaintiff fails to meet her burden under the direct method of proof—she cannot show that the

relevant decisionmakers for each position were aware of her disability, much less animated by it. *See* (*id.* ¶¶ 64–70.) And she provides no other direct evidence of discriminatory animus in Defendants' hiring decisions.

Plaintiff does not meet her burden under the indirect method of proof either. To indirectly establish a case for discriminatory failure to promote, Plaintiff must make a *prima facie* case that "(1) she belongs to a protected class, (2) she applied for and was qualified for the position sought, (3) she was rejected for that position, and (4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff." *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 858 (7th Cir. 2019).

Plaintiff does not make this case. Instead, the evidence shows that Plaintiff was not qualified for most of the positions she applied for, thus failing to meet the second prong of the test. *See* (Dkt. 133 ¶¶ 64–70); *see also* (Dkt. 139 ¶ 27; Dkt. 140 at 10). As to those positions for which Plaintiff may have been qualified, Plaintiff has failed to establish that Defendants granted the promotion to someone outside of the protected group who was not better qualified than her, thus failing the fourth prong of the test. (Dkt. 133 ¶¶ 64–70.)

### C. Hostile Work Environment under Title VII

Plaintiff also argues that Defendant subjected her to a hostile work environment in violation of Title VII. Under Title VII, employers cannot discriminate against their employees "because of their 'race, color, religion, sex, or national origin.'" *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 853 (7th Cir. 2023) (quoting

42 U.S.C. § 2000e-2(a)(1)). This prohibition on discrimination extends to the creation of a hostile work environment. *Id.* To establish a hostile work environment claim, a plaintiff must show that (1) her work environment was both subjectively and objectively offensive; (2) the harassment was because of her membership in a protected class (*e.g.*, because of her sex); (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Id.* When the alleged harasser is a coworker, "the employer is liable only if it was negligent in controlling working conditions." *Id.* at 853. In general, an employer's "legal duty in co-employee harassment cases will be discharged if it takes 'reasonable steps to discover and rectify acts of . . . harassment of its employees." *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022) (quoting *Parkins v. Civ. Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)).

As the record here reflects, Amazon promptly investigated when Plaintiff complained of her co-worker's sexual harassment. Immediately upon receiving the complaint, HR told Plaintiff they would investigate. Under a month later, HR concluded the investigation and issued a warning to the perpetrator. (Dkt. 133 ¶¶ 35–38.) Plaintiff has not raised further complaints since. Plaintiff has thus failed to show that Defendant acted negligently, thus there is no basis for employer liability.

### D. Retaliation

Plaintiff's final claim is for retaliation under both the ADA and Title VII. As in the discrimination context, a plaintiff "can establish a valid case of retaliation [in violation of Title VII or the ADA] using either the direct or indirect method of proof." *Dickerson*, 657 F.3d at 601; *Fischer v. Avanade, Inc.*, 519 F.3d 393, 408 (7th Cir. 2008).

Under the direct method, a plaintiff must present evidence that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there is a causal connection between the two. *Dickerson*, 657 F.3d at 601; *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). Under the indirect method, Plaintiff can establish a *prima facie* case without proving a direct causal link by showing that (1) she engaged in a protected activity, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse action, and (4) she was treated less favorably than similarly situated employees who did not engage in protected activity. *Dickerson*, 657 F.3d at 601; *Lewis*, 909 F.3d at 866. Under either test, the evidence must show that a retaliatory motive was a but-for cause of the challenged employment action. *See, e.g.*, *Vavra v. Honeywell Int'l Inc.*, 106 F.4th 702, 706 (7th Cir. 2024).

Plaintiff alleges she was retaliated against when Defendants failed to accommodate her (Dkt. 140 at 13–14), denied her promotions (Dkt. 140 at 14), and issued performance and behavioral warnings (Dkt. 138 ¶ 57; Dkt. 140 at 5, 9, 14). Plaintiff argues that the protected activities that triggered these alleged retaliatory actions against her were filing a sexual harassment report, filing EEOC charges, and commencing this litigation. (*See* Dkt. 139 ¶ 24; Dkt. 140 at 4; Dkt. 138 ¶ 58.) These theories are each addressed in turn.

*1. Failures to Accommodate*

Plaintiff's allegation that Defendant retaliated against her by failing to grant her accommodation requests itself fails. It is self-evident that Defendant could not

have retaliated against Plaintiff for activity that came after the alleged retaliatory action. Accordingly, any issues Plaintiff might have had with her June 2021 request for patience or her September and November 2022 requests for accommodations for her Achilles tendinitis logically could not have been retaliation for Plaintiff's actions in 2023 and 2024.

Even if this were not the case, Plaintiff is barred from pursuing a retaliation claim based on these occurrences. Under both Title VII and the ADA, charges must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1); *see Stepney*, 392 F.3d at 239; *Teague v. Northwestern Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012). Because Plaintiff did not bring her retaliation charge with the EEOC until June 12, 2024 (Dkt. 134 at 3), she is time-barred from pursuing this claim to the extent it is based on conduct that predates August 17, 2023.[1]

This leaves the August 2023 accommodation request, which Plaintiff alleges was not granted in full.[2] *See* (Dkt. 138 ¶¶ 43–46.) But even if Defendant's handling of Plaintiff's accommodation request constituted an adverse action that meets the statutory requirements for a violation, Plaintiff has not satisfied either the direct or

[1] Despite checking the box for "retaliation," Plaintiff did not raise the retaliation claim in her first EEOC charge, nor is her retaliation claim "like or reasonably related to" the allegations she did make in the charge. *See Moore*, 641 F.3d at 257. Regardless, even if the Court conducted the time-bar analysis using the first charge, filed on December 28, 2023, Plaintiff would still be barred from pursuing a retaliation claim predicated on the noted occurrences, as they also predate the March 3, 2023, cutoff date.

[2] Plaintiff does not dispute that her November 2023 accommodation request was granted. (Dkt. 138 ¶¶ 49–52.)

indirect tests for retaliation. Plaintiff has not shown a causal connection between the protected activities she engaged in and the purported issues with her accommodation required by the direct method. Indeed, she offered no evidence to show that the relevant decisionmakers at DLS even knew about her sexual harassment report to HR, her EEOC charges, or the filing of this litigation, much less that they decided Plaintiff's accommodation request intending to retaliate for those actions. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) (summary judgment warranted where plaintiff failed to establish that decisionmaker knew about complaints).

And because the record reflects no triable evidence that Plaintiff was treated less favorably than similarly situated employees who did not engage in protected activity, Plaintiff likewise cannot satisfy the indirect method of proof. *See, e.g.*, *Dickerson*, 657 F.3d at 601. A "similarly situated" employee is one who is directly comparable to the plaintiff in all material respects. *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005). To determine this, the Court looks at all relevant factors, including whether the employees "(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience . . . provided the employer considered these latter factors in making the personnel decision." *Id.* at 597. Although Plaintiff' identifies "Michael Warren, Tina . . . Mitchell," and others as "Caucasian people who are treated [more favorably]," she provides none of the information necessary to determine whether they qualify as "similarly situated employees." (Dkt. 133 ¶¶ 71–

75; Dkt. 138 ¶¶ 71–75.) Even if the Court were to consider these to be satisfactory comparators, Plaintiff provides no evidence to prove that she was treated less favorably; she says nothing about what medical documentation these coworkers provided, what restrictions they had, or whether they had dealt with the same accommodation consultant from DLS. (Dkt. 133 ¶¶ 71–75; Dkt. 138 ¶¶ 71–75.)

*2. Denied Promotions*

The retaliation claim based on Plaintiff's failure to promote theory also fails. First, in her EEOC charge asserting a retaliation claim, Plaintiff did not raise Defendants' failure to hire her for the various positions for which she applied. This failure means a retaliation claim premised on this conduct was neither raised with the EEOC nor "like or reasonably related" to the allegations Plaintiff did raise. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (holding that a sex discrimination claim is not "like or reasonably related to" allegations in an EEOC charge where the "sex discrimination" box was checked because plaintiff had not described the conduct giving rise to the claim in the EEOC charge). Accordingly, Plaintiff is barred from asserting it.

Second, even if Plaintiff were not barred from raising this claim, her argument fails on the merits. Plaintiff concedes that she did not know whether the hiring managers for the various positions for which she applied were aware of any of her protected activity (Dkt. 133 ¶¶ 66–68, 70); *see Brown*, 700 F.3d at 1108; and she otherwise presented no evidence to constitute direct proof of discrimination in Defendants' hiring decisions. Plaintiff also concedes not knowing who the positions

went to (Dkt. 133 ¶¶ 66, 68–70), and she makes no effort to show there were similarly situated employees who did not engage in the protected activity who were treated more favorably than she was.

*3. Performance and Behavioral Warnings*

Finally, Plaintiff's claim of retaliation based on Defendant's issuance of performance and behavioral warnings also fails. An analysis similar to that conducted to reject the discrimination claim predicated on these warnings applies here.

First, the Court need not consider the write-ups, which occurred in April, May, June, and July 2024, after the operative Complaint was filed and were not presented to the Court via Rule 15(d) of the Federal Rules of Civil Procedure. *Chi. Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011); *see* (Dkt. 133 ¶¶ 55, 61). Second, even if the Court considers the merits of this claim, Plaintiff fails to make the necessary showing. Plaintiff cannot prove retaliation directly, because she presents no evidence to indicate that Chiquita knew about Plaintiff's sexual harassment report, her EEOC charges, or this suit. (Dkt. 133 ¶¶ 60, 63); *see Brown*, 700 F.3d at 1108.

Nor can she prove retaliation indirectly. Plaintiff does not show that she was meeting her employer's legitimate expectations—she does not dispute her performance issues or her reported insubordination. (Dkt. 138 ¶¶ 53–55, 58–59); *see Mobley*, 531 F.3d at 548. And rather than show that similarly situated, nondisabled employees received better treatment, Plaintiff admits that Defendant bases its

productivity evaluations on standard objective criteria. (*See* Dkt. 138 ¶ 62). Plaintiff, therefore, fails to make the necessary showing to carry her retaliation claim.

## IV. CONCLUSION

Defendants' motion for summary judgment (Dkt. 132) is granted.

SO ORDERED in No. 23 C 6637.

Date: September 17, 2026

JOHN F. KNESS
United States District Judge